214 N.J. Super. 390 (1986)
519 A.2d 901
IN RE CERTIFICATION OF MASTER PLAN AND LAND USE ORDINANCES OF THE TOWNSHIP OF BERKELEY.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1986.
Decided December 22, 1986.
*392 Before Judges DREIER, SHEBELL and STERN.
Richard J. McManus argued the cause for appellant (Kenney & McManus, attorneys).
John M. Van Dalen, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; John M. Van Dalen, on the brief).
No brief was filed on behalf of the Governor of the State of New Jersey.
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellants, National Pinelands Alliance, Michael Garabedian, its president, and Gary Patterson, chair of the Sierra Club West Jersey Group, appeal the New Jersey Pinelands Commission's certification of the Master Plan and Lane Use Ordinances of the Township of Berkeley as conforming with the Comprehensive Management Plan ("CMP") under the State Pinelands Protection Act, N.J.S.A. 13:18A-1 et seq., and the federal National Parks and Recreation Act, 16 U.S.C.A. § 471i, as well as the Governor's approval of that certification.
The Township of Berkeley, with approximately 38 percent of its land area within the Pinelands, applied in August 1982 for certification of its Master Plan and Land Use Ordinances as conforming with the CMP under the Pinelands Protection Act and National Parks and Recreation Act. The Pinelands Commission passed a resolution on November 5, 1982 granting certification conditioned upon certain modifications. In June 1983 the municipality adopted a revision, consistent with County Plan amendments, which redesignated approximately 300 acres of Forest Area as a Rural Development Area with a Municipal Reserve Option. After earlier rejections were followed by Township amendments, the Pinelands Commission following a public hearing on October 4, 1985 adopted a resolution *393 certifying the Master Plan and Land Use Ordinances of Berkeley Township.
We are presented with the issue of whether the Commission and the Governor improperly approved the area designation as a Municipal Reserve Area in light of the alleged violations of N.J.A.C. 7:50-5.52(a), which provides in pertinent part:
(a) A municipality may, in its master plan and land use ordinance, designate lands in Rural Development Areas that are adjacent to or contiguous with a Regional Growth Area or areas of existing growth and development located outside of the Pinelands as Municipal Reserve Areas, provided that the area designated:
........
2. Has a relatively uniform boundary which conforms to physical or environmental features;

........
5. Is not contiguous with a ..., Forest Area... and preserves an adequate buffer of low intensity use between the Municipal Reserve Area and such districts.... [(emphasis added)].
Appellants direct our attention to the fact that the Municipal Reserve Area created was previously designated as a Forest Area, remains immediately adjacent to a Forest Area, is without a "low intensity use" buffer and that its boundaries conform to existing property lines and not to physical or environmental features of the natural topography.
Some background of the Federal and New Jersey Pinelands preservation efforts is helpful to an understanding of the issue. In 1978 Congress passed and the President signed the National Parks and Recreation Act which contains the following purposes in Section 502:
(1) to protect, preserve and enhance the significant values of the land and water resources of the Pinelands area;
(2) to encourage and assist the State of New Jersey and its units of local government in the development of a comprehensive management plan for the Pinelands area in order to assure orderly public and private development in the area consistent with the findings of this section;
(3) to provide, during the development of this comprehensive plan, Federal financial assistance for the acquisition of lands in the Pinelands area that have critical ecological values which are in immediate danger of being adversely affected or destroyed;

*394 (4) to encourage and assist the State and its units of local government in developing a governmental mechanism to implement this comprehensive plan, and to provide Federal financial assistance for the acquisition of lands consistent with the comprehensive plan;
(5) to encourage adequate coordination of all government programs affecting the land and water resources of the Pinelands area. [16 U.S.C.A. § 471i(b)].
This act established the Pinelands National Reserve in seven of our southerly counties. 16 U.S.C.A. § 471i(c). In June 1971 the New Jersey Legislature passed the Pinelands Protection Act, N.J.S.A. 13:18A-1 et seq., in order to implement the Federal Act and thereby obtain Federal funding for land acquisition and a comprehensive management plan for the Pinelands area. A Pinelands Commission was created and charged with the duty to adopt a comprehensive management plan which was to include a land use capability map and comprehensive statement of policies for planning and managing the development and land use in the Pinelands area. N.J.S.A. 13:18A-4 and 8. In addition to adoption by the Commission and consistent with the federal statute, the CMP requires approval by the Governor of New Jersey and the United States Secretary of Interior. N.J.S.A. 13:18A-10b; 16 U.S.C.A. § 471i(g). Unilateral modification of the CMP by the Commission is precluded by an agreement made pursuant to the Federal statute. 14 N.J.R. 1102(b).
The CMP, N.J.A.C. 7:50-1.1 et seq., divides Protection Areas into various land use categories including Regional Growth and Forest Areas. N.J.A.C. 7:50-5.12. Forest Areas are defined as:
[U]ndisturbed, forested portions of the Protection Area which support characteristic Pinelands plant and animal species. These areas are an essential element of the Pinelands environment and are very sensitive to random and uncontrolled development. Some parts of the Forest Areas are more suitable for development than others provided that such development is subject to strict environmental performance standards. [N.J.A.C. 7:50-5.13(b)].
Provision is also made in the CMP for areas known as Municipal Reserve Areas within Rural Development Areas, the latter of which are "adjacent to or contiguous with a Regional Growth Area or areas of existing growth and development located *395 outside of the Pinelands ..." subject to the six conditions enumerated in N.J.A.C. 7:50-5.52(a), two of which were allegedly violated by Berkeley. Regional Growth Areas are areas of existing growth or lands immediately adjacent to such areas "which are capable of accommodating regional growth influences while protecting the essential character and environment of the Pinelands, provided that the environmental objectives of subchapter 6 are implemented through municipal master plans and land use ordinances." N.J.A.C. 7:50-5.13(g).
The Township of Berkeley was required to establish a Master Plan and Land Use Ordinance which would conform to the minimum standards of the CMP. N.J.S.A. 13:18A-12; N.J.A.C. 7:50-2.1. The Municipal Reserve Area in dispute would permit from 1153 to 1739 units of housing and as much as 73 acres of commercial or institutional development. It is the contention of the Commission
that the 282 acres first became a Rural Development Area through refinement of management area boundaries, and, in the same conformance process, it was designated as an area where a Municipal Reserve Option could be exercised in the future, meaning that there is a potential for significant development of the tract if insufficient land is left in the Regional Growth Area.
While conceding that the southern and western boundaries of the new area are next to the Forest Area, the Commission argues that this "defect" could have been remedied by including additional buffer acreage in the Rural Development Area at the expense of "up-zoning" more Forest Area to Rural Development densities. The Commission says it is more environmentally sound to let the Forest Area be its own buffer than to delineate a Rural Development Area.
In our view the position of the Commission is shallow, treating the changes complained of as no more than the reshading of areas on a map. Sight has been lost of the fact that Forest Areas according to the CMP are undisturbed, forested portions of the Protection Area which support characteristic Pinelands plant and animal species. N.J.A.C. 7:50-5.13(b). These areas presumably truly exist and therefore are to be protected under Federal and State laws. It is just such a *396 Forest Area that the Commission, without benefit of amendment to the CMP, has permitted to be designated as a Municipal Reserve Area within a Rural Development Area, when the CMP unequivocally prohibits such a designation. The CMP only permits it where the designated area "[i]s not contiguous with a Preservation Area district, Forest Area or Agricultural Production Area and preserves an adequate buffer of low intensity use between the Municipal Reserve Area and such districts." N.J.A.C. 7:50-5.52(a)5. We cannot perceive how a Forest Area, if properly so defined, can alternately be designated a Municipal Reserve Area. The two are incompatible; the Forest Area is an existing reality which is by the criteria of the CMP not capable of being preserved if subjected to the uses and densities of a Municipal Reserve Area. The intensity of permitted residential land use in a Forest Area under N.J.A.C. 7:50-5.23 is many times less than that permitted in a Regional Growth Area under N.J.A.C. 70:50-5.28, which is the development density permitted in a Municipal Reserve Area. N.J.A.C. 7:50-5.53.
If indeed there is any factual basis for reclassifying an environmentally designated geographical area, previously a Forest Area, as a Regional Growth or Municipal Reserve Area it may only be accomplished through formal amendment to the CMP so that there can be a full hearing upon proper notice thereby permitting a full determination as to whether the change is justified. The unilateral modification which the Commission undertakes here is without authority and in violation of agreement under Federal law. That is not to say there are not instances where changes may be only refinements of the lines of demarcation established in the CMP which do not require its amendment. Such, however, is not the case here. The Commission here has certified a Municipal Plan and Land Use Ordinance which substantively do not conform to the CMP. The action taken constitutes an amendment to the CMP and must be so processed, including the requirements of Gubernatorial and Department of Interior review.
*397 We void the certifications under review and reverse and remand to the Commission.